# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MISSOURI
# SOUTHEASTERN DIVISION

| | |
|---|---|
| DANA RELLI, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 1:20-cv-00038-AGF |
| | ) |
| KILOLO KIJAKAZI,[1] | ) |
| Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM AND ORDER

This action is before this Court for judicial review of the final decision of the Commissioner of Social Security finding that Plaintiff Dana Relli was not disabled and thus not entitled to disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434. For the reasons set forth below, the decision of the Commissioner will be affirmed.

### BACKGROUND

The Court adopts the statement of facts set forth in Plaintiff's Statement of Uncontroverted Facts (ECF No. 12-1) and Defendant's Statement of Additional Facts (ECF No. 13-2). Together, these statements provide a fair description of the record before the Court. Specific facts will be discussed as needed to address the parties' arguments.

---

[1] Kilolo Kijakazi is now the Acting Commissioner of Social Security. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, she is substituted as the Defendant in this suit.

Plaintiff, who was born on November 11, 1963, has a college degree and worked as a recruiter for the Army National Guard from 1997 to 2016. She filed an application for disability insurance benefits on April 6, 2017, alleging a disability beginning December 9, 2016, due to anxiety, depression, and degenerative disc disease. Tr. 17, 70-71. After her application was denied at the administrative level, she requested a hearing before an Administrative Law Judge (ALJ). An ALJ held a hearing on April 9, 2018, and thereafter issued an unfavorable decision, which the Appeals Council remanded for further findings. Tr. 104. On March 11, 2019, the ALJ heard further testimony from Plaintiff, who was represented by counsel, and from a vocational expert (VE). On March 25, 2019, the ALJ issued a decision finding that Plaintiff had the residual functional capacity (RFC) to perform a full range of work at all exertional levels but with the following non-exertional limitations:

> [M]entally, she could understand and remember simple and detailed instructions, but not complex instructions. The claimant can occasionally interact with the general public, co-workers, and supervisors. She can be around other employees throughout the workday, but capable of only occasional conversations and interaction. She can perform simple, routine, repetitive tasks; however, changes in the work setting would need to be infrequent and gradually introduced. The claimant could perform no fast-paced tasks with strict production quotas, but variable paced tasks with end of day production quotas would be acceptable.

Tr. 19.

The ALJ next found that Plaintiff could perform certain light and medium unskilled jobs listed in the Dictionary of Occupational Titles (DOT) (e.g., routing clerk, coater operator, router, hospital cleaner, warehouse worker, and machine package sealer), which the VE had testified that a hypothetical person with Plaintiff's RFC and vocational

2

factors (age, education, work experience) could perform and that were available in significant numbers in the national economy.  Accordingly, the ALJ found that Plaintiff was not disabled under the Act.  On June 10, 2019, the Appeals Council denied Plaintiff's request for review.  Plaintiff has thus exhausted her administrative remedies, and the ALJ's decision is the final decision of the Commissioner before the Court for review.  In her sole point of error, Plaintiff argues that the ALJ's decision is not supported by substantial evidence on the whole record because the ALJ failed to allocate the proper amount of weight to certain aspects of the evidence regarding her mental impairments.

**The ALJ's Decision (Tr. 14-25)**

The ALJ found that Plaintiff had severe impairments of major depressive disorder and anxiety disorder.[2]  However, he found that these impairments, either alone or in combination, did not meet or medically equal the criteria of listings 12.04 (depressive, bipolar, and related disorders) and 12.06 (anxiety and obsessive-compulsive disorders). These conditions are not deemed disabling unless functional limitations known as "Paragraph B criteria" are present, meaning a claimant has one extreme or two marked functional limitations in her ability to: (1) understand, remember, or apply information; (2) interact with others; (3) concentrate, persist, or maintain pace; and (4) adapt or

---

2   The ALJ also acknowledged that the record contained evidence of non-severe impairments from degenerative disc disease, gastrointestinal reflux disease, gastritis, duodenitis, irritable bowel syndrome, and TMJ.  Plaintiff does not challenge the ALJ's finding that these conditions are non-severe.  Plaintiff challenges the decision only with respect to the ALJ's findings concerning her mental impairments.

manage oneself.   20 C.F.R. § 404.1520a(c)(3).

In applying "paragraph B" criteria, the ALJ found that Plaintiff had only moderate limitations all four categories.   As such, the ALJ found that the paragraph B criteria were not satisfied.   When Paragraph B criteria are not satisfied, the relevant listings also have additional functional criteria known as "Paragraph C criteria," used to evaluate serious and persistent mental disorders involving repeated episodes of decompensation or an inability to function outside a highly supportive living arrangement.   The ALJ found that these criteria were not present.   Tr. 19.   In determining Plaintiff's RFC and limitations, the ALJ reviewed the following evidence as relevant to her mental impairments.

Plaintiff reported that she had difficulty concentrating and making decisions due to daily anxiety and weekly panic attacks.   She was afraid to be around people, and her medications were unhelpful.

Medical records from 2016 to 2018 reflect treatment for anxiety and depression by Dr. Roderic Crist at Lacroix Medical Center and by Dr. Kishore Khot at Community Counseling Center.   Tr. 432-462.   In February 2016, Plaintiff was prescribed Doxepin to help with insomnia.   In March, she was anxious but declined anxiety counseling.   In April 2016, Plaintiff reported frequent crying, so Dr. Crist wrote her an excuse for two weeks off work and sought to manage her conditions with medication.   In May 2016, Plaintiff reported to Dr. Khot that Dr. Crist had prescribed Lexapro and Ativan and that she was feeling better and ready to start counseling.   In June 2016, she had stopped taking her medications and was having panic attacks.   Dr. Khot prescribed Paxil.   In July 2016 she was feeling better.   In October 2016, she went to the emergency room at

4

Saint Francis Medical Center when she could not get her prescriptions filled elsewhere. Tr. 418. She reported to Dr. Khot the next day that the Paxil and Doxepin were helping, though she still had panic attacks occasionally. In December 2016, she reported to Dr. Khot that she was feeling better. He added Vistaril to her other anxiety medications and noted that she had started counseling.

Plaintiff underwent counseling with a psychologist, Dr. Ben Lanpher, at Saint Francis Medical Center from November 2016 to February 2017. Tr. 520-530. In November 2016, Dr. Lanpher provided relaxation literature on deep breathing, muscle relaxation, visualization, and meditation to improve Plaintiff's coping skills. Plaintiff threw away the information without reading it. Tr. 523. In December 2016, Dr. Lanpher noted that Plaintiff is "somewhat of a perfectionist" and over-utilizes catastrophic thinking, sending her into a spiral. He recommended a book and some cognitive behavioral literature. In January 2017, Plaintiff was very anxious and reported that she did not read the book and did not find the literature helpful. She requested a letter excusing her from work for two weeks. Dr. Lanpher obliged for one week. Tr. 526. In February 2017, Dr. Lanpher noted that Plaintiff had not completed her reading homework and was resistant to his efforts to modify her thinking. Tr. 529.

In March 2017, Plaintiff had a relapse after she ran out of medicine. Dr. Khot increased her Paxil and counseled her on the importance of compliance. In May 2017, Dr. Khot noted that Plaintiff's depression was better but she still had panic attacks. He discontinued the Vistaril and increased the Ativan. He noted that Plaintiff intended to retire from the military in July 2017 and should continue in counseling to improve her

5

coping skills. Tr. 512-513.

Plaintiff had several visits with Tiffany Armes, a nurse practitioner in the office of a psychiatrist, Dr. Brad Robinson, between August 2017 and January 2018. Plaintiff responded to Latuda and was encouraged to go to counseling. She later switched to Abilify and began seeing a counselor. In December 2017,[3] Plaintiff met with a social worker, Jennifer Shelton, at the Veterans' Administration clinic. Plaintiff reported that she was taking her medications and felt calmer and was sleeping better. She stated that her anxiety was about the same even since she retired. Plaintiff continued in therapy with Ms. Shelton into 2018. In February 2018, Plaintiff experienced high anxiety and stated that her medical provider did not want to change her medication at that time. Plaintiff was educated about grounding techniques and practiced them during the session. In March 2018, Plaintiff reported high anxiety an inability to share her struggles with family members. Ms. Shelton engaged Plaintiff in a relaxation exercise and encouraged daily breathing and relaxation techniques. Ms. Shelton also questioned the efficacy of Plaintiff's various medications and recommended contacting Plaintiff's doctor for an adjustment. Tr. 793-794. In April 2018, Plaintiff agreed to sign a release of information permitting Ms. Shelton to speak with her doctor about her medication. Ms. Shelton also suggested evidence-based therapy, but Plaintiff was not interested. Tr. 784.

In June 2018, Plaintiff began seeing Dr. Mercy Sabapathypillai, a psychiatrist at the VA clinic. Dr. Sabathathypillai noted Plaintiff's history of depression and anxiety,

---

[3] Although the ALJ indicates November 2017, it is clear from the treatment records that he was referring to an entry dated December 8, 2017. Tr. 592.

her "long history of treatment resistance," misuse or non-compliance with medications, and refusal to seek support from family due to stigma surrounding mental health. Plaintiff agreed to try the anti-psychotic Trilafon.  Tr. 755-756.  In late July 2018, Plaintiff was taking her medications more regularly and feeling a little better.  In October 2018, Plaintiff was emotional and remained unwilling to engage her support system. She reported that the Trilafon helped a little.  Dr. Sabapathypillai noted that Plaintiff was "very med-seeking," asking for more Ativan.  In January 2019, the doctor noted that Plaintiff was still in denial about her mental illness and not interested in healthy lifestyle changes or bringing her family into treatment.  Tr. 678-679.

In May 2018, Plaintiff underwent a consultative psychological evaluation by Dr. Paul Rexroat.  Tr. 653-659.  He stated that Plaintiff is able to understand and remember simple instructions but had marked limitations in her ability to interact socially and adapt to her environment, though Plaintiff exhibited adequate social skills during the evaluation.  Dr. Rexroat opined that Plaintiff was able to sustain concentration, persistence, and pace with simple tasks, she was able to manage her funds, and her memory was average.

The ALJ noted that, in all of the medical records, Plaintiff was alert and oriented, had normal affect and speech, had normal insight and judgment, and had no suicidal ideations.

Based on the foregoing evidence, the ALJ found that, while Plaintiff's mental impairments could reasonably be expected to cause her symptoms, her statements concerning the intensity, persistence, and limiting effects of her symptoms were not

7

consistent with the medical evidence.   The ALJ reasoned that Plaintiff was capable of normal activities and was not restricted to a disabling degree, and she was often non-compliant with her medications and therapy.

Next, the ALJ discussed the medical opinions in the record.   State agency psychiatrist Dr. Charles Watson reviewed Plaintiff's records in May 2017 and found that Plaintiff retains the mental capacity to perform simple tasks on a sustained basis with limited public contact.   Tr. 76.   The ALJ found this opinion persuasive because it was consistent with the medical evidence and Plaintiff's own function report.

Dr. Khot completed a checkbox medical source statement in July 2017 and opined that Plaintiff had (1) moderate to extreme limitations in understanding and remembering instructions, (2) mostly extreme limitations in concentration and persistence, (3) moderate to extreme limitations in social interaction, and (4) extreme limitations in adaptability.   Tr. 518-519.   The ALJ found this opinion inconsistent with Plaintiff's own reports, the medical evidence, Dr. Watson's assessment, and Nurse Armes's medical source statement.

Nurse Armes completed a checkbox statement in March 2018 finding moderate to marked limitations in all areas of functioning.   Tr. 651-652.   The ALJ did not find this statement persuasive as it contained no reasoning.   The ALJ particularly took issue with the characterization of Plaintiff's limitations in social interaction insofar as the medical records consistently indicated that Plaintiff was able to respond to examiners and made good eye contact.

The ALJ found Dr. Rexroat's opinion somewhat persuasive to the extent he found

8

that Plaintiff had no limitations in concentration, persistence, pace, adaptability, and the ability to understand and remember simple instructions. However, the ALJ did not give weight to Dr. Rexroat's findings with respect to social limitations, again because Plaintiff presented normally to Dr. Rexroat and other medical providers, and her complaints of social limitations were self-reported.

Finally, the ALJ did not find the VA's disability determination persuasive because that agency uses a different standard.

Based on the foregoing, the ALJ concluded that the evidence supported an RFC with the non-exertional limitations described above. He further found that Plaintiff could perform certain unskilled jobs listed in the DOT (routing clerk, coater operator, router, hospital cleaner, warehouse worker, and machine package sealer), which the VE had stated that a hypothetical person with Plaintiff's RFC and vocational factors (age, education, work experience) could perform and that were available in significant numbers in the national economy. Accordingly, the ALJ found that Plaintiff was not disabled under the Act.

In her brief before this Court, Plaintiff argues that the ALJ's decision is not supported by substantial evidence on the whole record, particularly insofar as the medical source statements of Dr. Khot and Nurse Armes indicated disabling limitations in Plaintiff's ability to interact and adapt. Plaintiff asks that the ALJ's decision be reversed and remanded for an award of benefits or further consideration.

## DISCUSSION

**Statutory Framework**

To be entitled to benefits, a claimant must demonstrate an inability to engage in substantial gainful activity which exists in the national economy, by reason of a medically determinable impairment which has lasted or can be expected to last for not less than 12 months.  42 U.S.C. § 423(d)(1)(A).  The Commissioner has promulgated regulations, found at 20 C.F.R. § 404.1520, establishing a five-step sequential evaluation process to determine disability.  The Commissioner begins by deciding whether the claimant is engaged in substantial gainful activity.  If not, the Commissioner decides whether the claimant has a "severe" impairment or combination of impairments.  A severe impairment is one which significantly limits a person's physical or mental ability to do basic work activities.  20 C.F.R. § 404.1520(c).

A special technique is used to determine the severity of mental disorders, which are not deemed disabling unless functional limitations known as "Paragraph B criteria" are present, meaning a claimant has one "extreme" or two "marked" functional limitations in her ability to: (1) understand, remember, or apply information; (2) interact with others; (3) concentrate, persist, or maintain pace; and (4) adapt or manage oneself. 20 C.F.R. § 404.1520a(c)(3).  A "marked" limitation means a serious limitation in functioning independently, appropriately, effectively, and on a sustained basis in the given area.  An "extreme" limitation means an inability to function independently, appropriately, effectively, and on a sustained basis in that area. When paragraph B criteria are not satisfied, the relevant listings also have additional functional criteria

10

known as "paragraph C criteria," used to evaluate "serious and persistent" mental disorders. Paragraph C criteria require a medically documented history of the existence of the disorder for at least two years, with evidence of (1) medical treatment, mental health therapy, psychosocial support, or a highly structured setting that is ongoing and that diminishes the symptoms and signs of the claimant's disorder and (2) marginal adjustment, meaning a minimal capacity to adapt to changes in one's environment or to demands that are not already part of one's daily life.

If the impairment or combination of impairments is severe and meets the duration requirement, the Commissioner determines at step three whether the claimant's impairment meets or is medically equal to one of the deemed-disabling impairments listed in the Commissioner's regulations. If not, the Commissioner asks at step four whether the claimant has the RFC to perform his past relevant work. If the claimant cannot perform his past relevant work, the burden of proof shifts at step five to the Commissioner to demonstrate that the claimant retains the RFC to perform work that is available in the national economy and that is consistent with the claimant's vocational factors – age, education, and work experience. *See, e.g., Halverson v. Astrue*, 600 F.3d 922, 929 (8th Cir. 2010). When a claimant cannot perform the full range of work in a particular category of work (medium, light, and sedentary) listed in the regulations, the ALJ must produce testimony by a VE (or other similar evidence) to meet the step-five burden. *See Baker v. Barnhart*, 457 F.3d 882, 894 (8th Cir. 2006).

**Standard of Review**

In reviewing the denial of Social Security disability benefits, a court must review the entire administrative record to determine whether the ALJ's findings are supported by substantial evidence on the record as a whole. *Johnson v. Astrue*, 628 F.3d 991, 992 (8th Cir. 2011). The court "may not reverse merely because substantial evidence would support a contrary outcome. Substantial evidence is that which a reasonable mind might accept as adequate to support a conclusion." *Id*. (citations omitted). A reviewing court "must consider evidence that both supports and detracts from the ALJ's decision. If, after review, [the court finds] it possible to draw two inconsistent positions from the evidence and one of those positions represents the Commissioner's findings, [the court] must affirm the decision of the Commissioner." *Chaney v. Colvin*, 812 F.3d 672, 676 (8th Cir. 2016) (citations omitted). Put another way, a court should "disturb the ALJ's decision only if it falls outside the available zone of choice." *Papesh v. Colvin*, 786 F.3d 1126, 1131 (8th Cir. 2015) (citation omitted). A decision does not fall outside that zone simply because the reviewing court might have reached a different conclusion had it been the finder of fact in the first instance. *Id.* The Court "defer[s] heavily to the findings and conclusions of the Social Security Administration." *Wright v. Colvin*, 789 F.3d 847, 852 (8th Cir. 2015).

**Analysis**

Plaintiff asserts that the ALJ's decision is not supported by substantial evidence for several specific reasons: (1) Dr. Watson's opinion as a non-treating physician is not considered substantial evidence and was stale compared to other evidence; (2) Drs. Khot

12

and Rexroat and Nurse Armes all found more severe limitations in Plaintiff's social interaction and adaptability; (3) the ALJ's reasons for discounting the opinions of Dr. Khot and Nurse Armes were inconsistent with the evidence; (4) activities of daily living do not support a claimant's ability to work; (5) the ALJ disregarded a report from Plaintiff's commanding officer recommending non-retention due to her anxiety and depression; (6) the ALJ failed to articulate how the evidence supports the RFC; and (7) despite occasional improvements, Plaintiff's condition is chronic and not controlled by medication.

The Commissioner responds that (1) the ALJ did not rely exclusively on Dr. Watson's opinion but was entitled to give it some weight; (2) the ALJ adequately accounted for Plaintiff's limitations in the RFC; (3) the ALJ did not rely on Plaintiff's daily activities as evidence of her ability to work but only as relevant to the credibility of her subjective complaints; (4) Plaintiff's non-retention in the military does not belie her ability to perform simpler work; and (5) the Court's standard of review precludes Plaintiff's attempt to re-litigate the record.

Upon review of the record, the Court cannot say that the ALJ's decision falls outside the available zone of choice.  The ALJ was free to assign at least some weight to Dr. Watson's opinion from May 2017, issued just two months before Dr. Khot's opinion (July 2017).[4]  There is no requirement that an RFC finding be supported by a specific

---

[4]     For claims filed on or after March 27, 2017, such as Plaintiff's, the regulations were amended to eliminate the treating physician rule.  The new regulations provide that the Social Security Administration "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from your medical sources," but rather, the Administration will consider all

13

medical opinion. *Hensley v. Colvin*, 829 F.3d 926, 932 (8th Cir. 2016). An ALJ may rely on an agency physician's opinion when it is consistent with other medical evidence. *Mabry v. Colvin*, 815 F.3d 386, 391 (8th Cir. 2016). Dr. Watson's opinion is consistent with other evidence in the record. He acknowledged that Plaintiff has moderate limitations in social interaction. Drs. Khot and Rexroat checked certain boxes for moderate social limitations as well. Dr. Watson also acknowledged mild limitations in adaptability. Overall, however, Dr. Watson did not deem Plaintiff's limitations in these categories as severe as Dr. Khot and Nurse Armes indicated, and the medical records between the date of Dr. Watson's opinion and the date of Nurse Armes's opinion (March 2018) do not reflect such a substantial change in Plaintiff's condition as to render Dr. Watson's opinion obsolete, nor do subsequent records into 2018, which largely highlight Plaintiff's non-compliance with medications and ongoing resistance to therapy and family support. The ALJ is not required to accept every opinion but must weigh all the evidence in the record. *Mabry*, 815 F.3d at 391. Plaintiff's suggestion that the ALJ committed reversible error by failing to weigh the opinions of Dr. Khot and Nurse Armes in her favor ignores this Court's standard of review. The ALJ discussed the basis for any disagreement with treating opinions, and ALJ's findings that Plaintiff had moderate limitations in social interaction and adaptability are supported by the record as a whole. *See also Bankhead v. Berryhill*, 4:17-CV-2441-SNLJ, 2019 WL 183970, at *6 (E.D. Mo. Jan. 14, 2019) (noting that an ALJ need not give reasons for the weight assigned to non-

---

medical opinions according to several enumerated factors, the "most important" being supportability and consistency. 20 C.F.R. § 404.1520c.

treating sources).

With respect to the ALJ's references to Plaintiff's daily activities, Plaintiff is correct that a person's ability to engage in chores or hobbies does not demonstrate an ability to work. *Singh v. Apfel*, 222 F.3d 448, 453 (8th Cir. 2000). However, it is proper for an ALJ to consider a claimant's personal activities for purposes of assessing the credibility of her claims of incapacity. *McDade v. Astrue*, 720 F.3d 994, 998 (8th Cir. 2013). This is what the ALJ did here in finding that Plaintiff's independent activities belied her subjective complaints of disabling symptoms. "Credibility determinations are the province of the ALJ." *Nash v. Comm'r, Soc. Sec. Admin.*, 907 F.3d 1086, 1090 (8th Cir. 2018).[5]

With respect to Plaintiff's commanding officer's recommendation of non-retention, which the ALJ did not address in his RFC findings, Plaintiff accepts that an ALJ need not discuss all of the evidence in the record, but she argues that an ALJ also cannot "pick and choose" evidence supporting his conclusion. The Court does not agree with this characterization. Consistent with the officer's recommendation, the ALJ expressly found at step four that Plaintiff is not able to perform her past work due to her impairments. There was little else, if anything, for the ALJ to weigh in the officer's remarks.

Whether viewed separately or in total, Plaintiff's various critiques of the ALJ's

---

[5] Although SSR 16-3p, published March 28, 2016, eliminates the use of the term "credibility," expressly rescinding SSR 96-7p, Eighth Circuit precedent continues to employ the term to describe an assessment of whether the evidence supports a claimant's subjective complaints.

reasoning cannot overcome this Court's standards of review.   Though the RFC assessment draws from medical sources for support, it is ultimately an administrative determination reserved to the Commissioner.  *Winn v. Comm'r, Soc. Sec. Admin.*, 894 F.3d 982, 987 (8th Cir. 2018).   And while a different decision could be reached, the ALJ's findings are supported by substantial evidence in the record.   The ALJ did not disregard Plaintiff's limitations in social interaction and adaptability but rather accounted for them in the RFC by allowing only occasional interactions and gradual changes.   This is a proper exercise of the ALJ's discretion.

While the Court must take into account "evidence that both supports and detracts from the ALJ's decision, as long as substantial evidence in the record supports the Commissioner's decision, [the Court] may not reverse it because substantial evidence also exists in the record that would have supported a contrary outcome, or because [the Court] would have decided the case differently."  *Andrews v. Colvin*, 791 F.3d 923, 928 (8th Cir. 2015).   When it is possible to draw different conclusions from the evidence and one represents the Commissioner's findings, this Court must affirm the decision.  *Chaney*, 812 F.3d at 676.   The ALJ's decision reflects that he considered the whole record, and his RFC determination is supported by substantial evidence therein.

## CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** that the decision of the Commissioner is **AFFIRMED**. A separate Judgment shall accompany this Memorandum and Order.

　　　　　　　　　　　　　　　　　　_____
　　　　　　　　　　　　　　　　　　AUDREY G. FLEISSIG
　　　　　　　　　　　　　　　　　　UNITED STATES DISTRICT JUDGE

Dated this 29th day of September 2021.